# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | Hon. Mark Falk |
| MICHAEL KYEREME, a/k/a "Michael Appiahkyeremeh," a/k/a "James Wood" | : : | Mag. No. 07-3519 (MF) |

I, Jason DiJoseph, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

Between on or about August 28, 2002 and on or about March 2, 2007, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute a scheme and artifice to defraud and for obtaining money and property by means of materially false pretenses, representations and promises, defendant MICHAEL KYEREME did:

> knowingly and willfully deposit and cause to be deposited certain mail matter and things to be sent and delivered by private and commercial interstate carriers,

in violation of Title 18, United States Code, Section 1341.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT A

continued on the attached page and made a part hereof.

Jason DiJoseph, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
March 5, 2007, at Newark, New Jersey

HON. MARK FALK
United States Magistrate Judge

Signature of Judicial Officer

## ATTACHMENT A

I, Jason DiJoseph, a Special Agent for the Federal Bureau of Investigation, having conducted an investigation and having spoken with other individuals, have knowledge of the following facts:

1. At all relevant times, defendant MICHAEL KYEREME, a/k/a "Michael Appiahkyeremeh, a/k/a "James Wood," (hereinafter defendant "MICHAEL KYEREME") was an independent contractor hired to provide information technology support to the City of Newark. As an independent contractor, defendant MICHAEL KYEREME was responsible for assisting Newark employees when computer problems arose that required technical support or "trouble-shooting" by a computer technician. If it was determined that a computer-related problem could not be solved without outside assistance or a replacement part, defendant MICHAEL KYEREME was authorized to contact Cisco Systems, Inc. ("Cisco") for technical assistance and, if necessary, to request a replacement part.

2. At all relevant times, the City of Newark maintained service contracts with Cisco pursuant to which Cisco was required to provide customer service for faulty parts and to replace any Cisco parts deemed to be inoperable or defective with new or refurbished working parts of the exact type found to be inoperable. Those service contracts further entitle the City of Newark to "Advance Replacement" of defective or inoperable parts to ensure that the City's computer systems suffer minimal disruption in the event that a part becomes inoperable. This provision required Cisco to replace non-working parts upon request and, in turn, required the City of Newark to return the non-working parts to Cisco within ten days of receiving the replacement parts.

3. Between on or about August 28, 2002 and on or about March 2, 2007, defendant MICHAEL KYEREME used his position as an independent contractor for the City of Newark to engage in a scheme to defraud Cisco of money and property in the amount of more than $10 million furthered by the use of commercial interstate carriers.

4. In particular, since at least August 28, 2002, defendant KYEREME has requested a large volume of replacement parts from Cisco, falsely claiming that certain Cisco parts in Newark's computer system were "dead" and "not responding" to trouble-shooting efforts and thus required replacement. In response, and pursuant to the service contracts, Cisco sent approximately 280 replacement parts of the exact types alleged to be inoperable to defendant KYEREME on behalf of the City of Newark. Defendant KYEREME, however, failed to return approximately 148 of the allegedly inoperable parts. In addition, although defendant KYEREME returned approximately 132 of the allegedly inoperable Cisco parts, only 33 of those parts matched the part for which Cisco sent a replacement. In other words, defendant KYEREME returned approximately 99 parts to Cisco that were either different Cisco parts or the parts of other computer companies, all of which were of lesser commercial value than the part alleged to be inoperable and required to be returned to Cisco. The parts returned to Cisco generally were shipped via commercial carrier.

10. On or about March 2, 2007, defendant MICHAEL KYEREME agreed to speak with FBI agents. Defendant KYEREME stated, in substance and in part, that he had been fraudulently ordering Cisco parts on behalf of the City of Newark over a period of several years. Defendant KYEREME explained that upon receipt of the parts from Cisco, he would keep the parts at his residence for several days before shipping them to a computer reseller outside of New Jersey. Defendant KYEREME stated that his contact at this reseller would provide him with a list of Cisco parts that he wished KYEREME to procure, after which KYEREME would attempt to order the parts from Cisco if such a part could be incorporated into Newark's computer systems. Defendant KYEREME explained that every check which he had received from this out-of-state computer reseller related to parts that he had fraudulently ordered from Cisco on behalf of the City of Newark, and that he had no other legitimate business with this reseller. Defendant KYEREME also stated that "I knew what I was doing was wrong and that it was stealing." He also explained that the money he was offered to fraudulently order and divert these parts was "overwhelming."